UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SARA L. HILDEBRAND,<br>      Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 2:17-CV-108-JPK |
| ANDREW M. SAUL,<br>Commissioner of Social Security<br>Administration,<br>      Defendant. | )<br>)<br>)<br>)<br>) |

## **OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed on March 8, 2017, and Plaintiff's Opening Brief in support of reversing the Decision of the Commissioner of Social denying her claim for disability insurance benefits [DE 34]. Defendant filed a Memorandum in Support of Commissioner's Decision [DE 40], and Plaintiff filed a Reply [DE 41]. For the following reasons, the Court remands this matter for further administrative proceedings.

## **PROCEDURAL BACKGROUND**

On June 27, 2013, Plaintiff protectively filed an application for disability insurance benefits, alleging disability beginning May 10, 2010, due to the following conditions: brain tumor, Addison's disease, difficulty walking, memory issues, diabetes, insomnia, sinus problems, and cataracts. (AR 21, 132, 143).[1] The application was denied initially and on reconsideration (AR 132-61), after which Plaintiff requested a hearing which was held before an Administrative Law Judge on October 6, 2015. (AR 46, 175-76). Following an unfavorable hearing decision on December 9, 2015 (AR 21-38), and the Appeals Council's denial of review on January 6, 2017

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

(AR 1-6), Plaintiff appealed to this Court on March 8, 2017. (ECF No. 1). The parties thereafter consented to have a United States Magistrate Judge conduct all further proceedings and order the entry of final judgment. (ECF No. 12). The Commissioner then filed a Consent Motion to Remand Pursuant to Sentence Six of 42 U.S.C. §405(g), due to an incomplete audio recording of the administrative hearing resulting in an incomplete hearing transcript. (ECF No. 21). The presiding Magistrate Judge therefore remanded the case to the agency for further proceedings as requested, including a new administrative hearing and decision. (ECF Nos. 21-22). A new hearing was then held before a different Administrative Law Judge (ALJ) on August 4, 2018. (AR 1191). On November 30, 2018, this ALJ issued an unfavorable decision, making the following findings:[2]

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2015.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2010 through her date last insured of June 30, 2015.
>
> 3. Through the date last insured, the claimant had the following severe impairments: history of benign brain tumor; organic brain syndrome; degenerative disc disease; visual impairment; adrenal insufficiency; affective disorder and anxiety disorder.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant could lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently. She could stand and/or walk 2 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. The claimant could never climb ladders, ropes or scaffolds and was limited to work on even terrain. She could have only occasional exposure to environmental irritants but no exposure to poorly ventilated areas or to hazards such as unprotected heights or moving machinery. She was limited to work that did not require peripheral acuity or nighttime vision. She was

---

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

limited to work that did not require complex written or verbal communication. The claimant could understand, remember and carryout simple, routine, repetitive tasks. She could not perform work that required directing others, abstract thought or planning, and was limited to work involving only simple work-related decisions and routine workplace changes. She could not perform tasks that required intense focus or attention for more than 60 minutes continuously. She was limited to working at a flexible pace with no fast-paced production requirements, no teamwork, no tandem tasks, and occasional superficial interaction with the public and coworkers.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born [in July] 1970 and was 44 years old, which is defined as a younger individual age 18-44, on the date last insured.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 1, 2010, the alleged onset date, through June 30, 2015, the date last insured.

(AR 1165-81).

Following the ALJ's November 2018 decision, the Commissioner filed a Consent Motion to Reopen the instant action and proceed based on the supplemented administrative record. (ECF No. 29). After confirming the parties' continuing consent to have the undersigned United States Magistrate Judge conduct all further proceedings and order the entry of final judgment, this Court granted that motion on November 14, 2019. (ECF Nos. 30-31). This Court therefore has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

3

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999). At a minimum, an ALJ must articulate his analysis of the evidence to allow the reviewing court to trace the path of his reasoning and be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record, and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts three grounds for reversal of the ALJ's November 2018 decision. She contends the ALJ: (1) provided an RFC not supported by substantial evidence; (2) improperly assessed Plaintiff's subjective limitations; and (3) relied on unsubstantiated vocational expert (VE) testimony. (P's Brief at 11, ECF No. 34). The Court addresses each argument in turn.

### I. The ALJ's RFC Determination

Plaintiff first challenges the ALJ's RFC determination in four respects. Having accorded little weight to the opinions of the state agency reviewers and Plaintiff's treating endocrinologist and pain specialist (Drs. Mohammed Zeitoum and Heather Nath), Plaintiff argues the ALJ improperly assessed her medical record without any supporting medical opinion. (P's Brief at 13-15, ECF No. 34; AR 1174-75). Relatedly, Plaintiff contends the ALJ's independent assessment of her medical record failed to address the severity of her impairments, the negative effects of her ongoing steroid treatment, and the absenteeism related to those complications. (ECF No. 34, at 13-18). As explained below, the Court agrees that remand is required for reconsideration of Plaintiff's RFC in light of her full medical record, including the opinions of Drs. Zeitoum and Nath.

#### A. Plaintiff's Brain Tumor Treatment and 2010 Hospitalization

As Plaintiff argues, her medical record details a "very complicated medical history." (*Id.* at 9 (quoting AR 964)). She was originally diagnosed with a benign intraventricular meningioma (brain tumor) in about 2002. (AR 990-91, 1003). By November 2009, it had significantly increased in size, and Plaintiff was experiencing migraines, blackouts, nausea, and visual impairment. (AR 346, 990-93). Surgery was not performed due to the location of the tumor in a ventricle, so Plaintiff underwent stereotactic radiosurgery in December 2009. (AR 390-95, 552, 560, 1003-05). Approximately six months later in July 2010, she experienced severe brain swelling and was hospitalized from July 12th to 20th. (AR 310, 552, 560). An MRI on July12, 2010, revealed "massive edema" in Plaintiff's brain apparently due to her prior radiation treatment, and the record indicates she suffered significant physical and cognitive impairments as a result. (AR 1008, 1015).

Rehabilitation, occupational therapy, and speech assessments in July 2010 indicated impaired mobility, right-sided disfunction, difficulty controlling her right limbs, impaired vision

and cognition, mild-to-moderate speech impairment, and moderate-to-severe impairment in Plaintiff's ability to write. (AR 1015-1017, 1083, 1089). She also reported hearing loss on the right side (AR 1092); she could follow 1-step commands 90% of the time and required extra time to process and respond (AR 1082); and by the time of her discharge, Plaintiff was unable to perform two or more step tasks due to decreased attention and a high level of distractibility. (AR 1106). Thus, according to psychological and neuropsychological agency consultative examination reports in September and October 2013, Plaintiff's brain swelling in July 2010 "resulted in loss of walking, hearing, speech, and vision problems" (AR 560), and her "intellectual abilities fell far below educational expectations," along with impaired attention and visual motor speed. (AR 557). Additionally, steroid therapy treatments required to address her brain swelling and keep it from returning caused muscle weakness, particularly in the lower extremities, which also affected her functional abilities, including her ability to walk. (AR 107, 552, 564-67).

    **B.**    **Dr. Zeitoun's Opinions**

Although the ALJ's decision acknowledges that Plaintiff's July 2010 brain swelling "affected her speech, gait and memory" (AR 1170), it does little to determine the extent or duration of those impairments. Instead, the decision turns quickly to a March 2013 neurosurgery follow-up report stating that Plaintiff was "neurologically and radiologically stable" and had normal upper and lower extremity strength, range of motion, and gait. (*Id.* (citing AR 344-45). Based on this report and two later examinations in October 2013 and January 2014, the ALJ rejected Dr. Zeitoun's December 2013 medical source statement, which opined that Plaintiff could lift/carry less than ten pounds and stand/walk less than a half hour in an eight-hour workday, due to muscle weakness caused by adrenal insufficiency resulting from her radiation treatment. (AR 682-84; AR 1174-75 (citing AR 344-45, 564-66, 652-55)). While the Commissioner contends this

7

constituted substantial evidence to reject Dr. Zeitoun's opinions (D's Mem. at 11-13, ECF No. 40), this Court concludes that the ALJ improperly failed to consider important aspects of the October 2013 and January 2014 records that the ALJ relied upon, as well as several additional records that detail significant limitations during the time leading up to Dr. Zeitoun's opinion and afterward. *See Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (when assessing a medical opinion, ALJ improperly "pointed to several instances in [claimant's] medical records where doctors reported that he was doing 'well' in recovery – but said nothing about the accompanying notes that he was still in pain and suffered from residual post-surgery complications": "An ALJ 'cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010))).

      For instance, the October 2013 agency consultative examination on which the ALJ and Commissioner rely noted that Plaintiff was "unable to walk or talk" after her July 2010 brain swelling, and that these problems were only "beginning to abate." (AR 564). The report also noted weakness in Plaintiff's lower extremities "presumably due to the steroids," atrophy in her quadriceps, difficulty walking, and inability to walk on toes or heels, and recommended physical therapy and gradual steroid reduction to increase strength in her extremities and enable "significantly more physical activities." (AR 564, 567). This report was consistent with treatment records from September 2013 to January 2014 (including the January 2014 record cited by the ALJ and Commissioner), which similarly noted lower extremity weakness and difficulty ambulating long distances, possibly or likely due to "steroid myopathy." (AR 652-55, 659-62, 663-66, 669-72). Physical therapy records during the same timeframe confirm Plaintiff's general muscle weakness and muscle atrophy due to "constant steroid use," and indicate she could walk only 0-10 minutes and slowly, was unable to carry any weight, and had goals to increase these abilities to

8

walking 21-30 minutes and carrying light loads (AR 695-756), which she apparently achieved by March 2014. (AR 778). But while repeated attempts were made to reduce Plaintiff's steroid dosage in an effort to address her muscle weakness, they failed due to the return of brain swelling, and Plaintiff has been told for several years now that she is steroid dependent. (AR 552, 764, 791, 833-34, 964, 1196, 1452, 1822, 1860-61).

Although the ALJ noted some of this evidence, the decision failed to confront the significant impairments Plaintiff suffered at the time of her July 2010 hospitalization or the steroid-related weakness hampering her recovery, dwelling instead on isolated findings of normal gait and extremity strength in these and other records. (AR 1170-75). Not only was the ALJ required to address contrary evidence that corroborated Plaintiff's claimed limitations and supported Dr. Zeitoun's opinions, the foregoing records further indicate that even the normal strength and gait findings relied upon by the ALJ do not contradict the muscle weakness and atrophy, difficulty ambulating long distances, and possible steroid myopathy sometimes noted in the very same records. (*See*, *e.g.*, AR 652-55 (1/15/2014 report cited by ALJ (AR 1175) noting 5/5 upper extremity strength and normal gait, but also 4-/5 reduced lower extremity strength, difficulty ambulating long distances, and muscle weakness possibly due to steroid myopathy); *see also* AR 964-70 (7/30/2015 report noting normal gait and 4-5 strength in upper and lower extremities, but also that Plaintiff was not able to maintain that level of strength "for very long before giving out," chronic upper and lower extremity pain and weakness, and a diagnosis of steroid myopathy).

This background lends support to Dr. Zeitoum's December 2013 opinions that Plaintiff could lift/carry less than 10 pounds and stand/walk less than a half hour in an eight-hour workday, in addition to other limitations (AR 682-84) – three months after treatment notes indicated her lower extremity weakness, difficulty ambulating long distances, and possible steroid myopathy

(AR 669-72), and one month after physical therapy records began confirming her ability to stand for 0-10 minutes and inability to carry any weight. (AR 741-56). The Court therefore concludes that remand is required for reconsideration of Dr. Zeitoun's opinions and Plaintiff's RFC in light of the medical evidence discussed above. This is not to say that Dr. Zeitoun's opinion must be accepted or that Plaintiff's RFC must change, only that the ALJ's decision failed to address this evidence sufficiently when making these determinations.

### C. Dr. Nath's Opinions

The record also lends support to Dr. Nath's August 2015 medical source statement that the ALJ similarly failed to acknowledge. Dr. Nath opined that Plaintiff could lift five pounds, carry less than five pounds, and stand/walk less than one hour in an eight-hour workday; had trouble with balance when ambulating; was unable to walk a block on rough or uneven ground; needed an assistive device for uneven surfaces and prolonged ambulation; would need unscheduled breaks during the workday; would be off task over 30% of the workday; and would likely be absent five days per month. (AR 985-89). Dr. Nath's statement also included a marginal note indicating that Plaintiff's brain tumor "prevents working." (AR 987). While these limitations may be restrictive, as discussed above, Plaintiff's leg weakness, difficulty ambulating long distances, and trouble carrying even "light loads" are well documented. (AR 564, 567, 652-55, 659-62, 663-66, 669-72, 695-756, 778-79, 964-70). The record also indicates Plaintiff's issues with balance (AR 78-99, 103, 779, 863-76, 1203-08) and her use of a walker and/or cane at various times, particularly when fatigued (AR 263, 275, 1306, 1320, 1326-27, 1329-30). And even the ALJ acknowledged her need to work on even terrain. (AR 1174). This leaves Dr. Nath's opinions regarding Plaintiff's need for unscheduled breaks (as Dr. Zeitoun similarly opined), off-task time, and likely absences (AR 684, 986, 988), which also find support in the record that the ALJ failed to address.

As Plaintiff notes, her initial physical therapy upon discharge in July 2010 called for gait training with a walker 3-5 times a week (AR 1094), and she again regularly attended physical therapy sessions between November 2013 and March 2014 (AR 695-756, 778), and again between January and August of 2015. (AR 863-961, 1749-1752). As Plaintiff also argues, her medical issues would be expected to require visits with her primary care physician, neurologists, endocrinologists, rheumatologists, optometrists, and pain management physicians, particularly during the earlier part of her recovery. (P's Brief at 17, ECF No. 34). Moreover, in addition to her muscle weakness, Plaintiff's steroid therapy potentially contributed to a weakened immune system and related illnesses that may have required absences as well. In that regard, Plaintiff and her husband testified that her immune system is very weak, she gets sick more often, and her recovery times are longer (AR 89, 100, 106-07, 1206), and the record documents visits for various infections and other illnesses. (AR 461-62, 613, 1125, 1582-85, 1595, 1605, 1610, 1615, 1630). Plaintiff also testified to problems with fatigue requiring one or two naps during the day related to the timing of her steroid doses (AR 69, 1206-07, 1212), and her medical record discusses the same problem (AR 833, 842, 1483), along with general complaints of fatigue. (AR 614, 653, 660, 664, 670, 688, 732, 806, 811, 816, 851, 881).

Although the ALJ acknowledged Plaintiff's problem with fatigue, he found it adequately accommodated by limiting her to sedentary work and simple, routine, and repetitive tasks, and "with respect to climbing ladders, ropes or scaffolds, and by including limitations with respect to hazards, such as unprotected heights or moving machinery." (AR 1178-79). These limitations might be adequate had the ALJ considered and rejected Plaintiff's testimony regarding the need to nap during the day, but the decision did not mention that claim, much less discredit it. *See Matthews v. Saul*, 833 F. Appx. 432, 436-38 (7th Cir. 2020) (ALJ reasonably accommodated

11

daytime fatigue with RFC limitations concerning workplace hazards and driving, rather than off-task time, where decision considered claimant's testimony regarding need to sleep during the day, and ALJ's rejection of that testimony was supported by substantial evidence). Given Plaintiff's undisputed testimony regarding her need to sleep during the day (AR 69, 1206-07, 1212), and the Vocational Expert's testimony that over 15% off-task time would preclude work (AR 1219), the ALJ should address these issues directly on remand. *See Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017) (requiring consideration of claimant's uncontradicted testimony re need to nap during workday where VE testified such need would preclude work).

The ALJ should also reconsider the other limitations discussed in Dr. Nath's August 2015 medical source statement (e.g., unscheduled absences, lifting/carrying, standing/walking, balance, walking on uneven ground, and need for an assistive device). (AR 985-89). While the Commissioner contends "[t]he ALJ explained that he gave little weight to Dr. Nath's opinions because the doctor's own contemporaneous treatment notes did not appear to support such significant limitations" (D's Mem. at 14, ECF No. 40), the decision again relies on findings of normal muscle strength and gait that fail to address the issues of muscle weakness and atrophy, steroid myopathy, and difficulty walking long distances in the same and other records discussed above. (*See, e.g.*, AR 1175 (citing AR 933 (Dr. Nath's 6/9/2015 treatment note indicating Plaintiff's "weakness," "shooting pain in her right leg . . . like someone is stabbing her in the leg," "trouble walking due to the pain," and "difficulty performing daily activities in the right bicep"); *see also* other records discussing Plaintiff's leg weakness, difficulty ambulating long distances, and trouble carrying "light loads," including AR 564, 567, 652-55, 659-62, 663-66, 669-72, 695-756, 778-79, 964-70). The Court therefore concludes that remand is required to reconsider these remaining opinions in Dr. Nath's medical source statement as well.

Accordingly, this case is remanded for reconsideration of the opinions of Drs. Zeitoun and Nath and Plaintiff's RFC in light of her full medical record. But again, none of this suggests that these opinions must be accepted or that Plaintiff's RFC must be modified. "The resolution of competing arguments based on the record is for the ALJ, not the court." *Matthews*, 833 F. App'x at 436-37 (brackets omitted, quoting *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002)). "Even if the evidence could support additional limitations, such as time off-task or added breaks, the record evidence [may] not require the ALJ to draw this conclusion" on remand. *See Matthews*, 833 F. App'x at 436. The Court concludes only that the ALJ narrowly focused on findings of normal strength, range of motion, and gait to reject more stringent RFC limitations recommended by Drs. Nath and Zeitoun, without addressing accompanying notes indicating that Plaintiff continued to suffer from residual post-treatment complications, thereby "ignoring evidence that points to a disability finding." *See Reinaas*, 953 F.3d at 466 (quoting *Denton*, 596 F.3d at 425)).[3]

## II.     Plaintiff's Subjective Symptoms and Limitations

Plaintiff next argues that the ALJ's assessment of her subjective symptoms and limitations was addressed "under an improper standard" and improperly focused on Plaintiff's daily activities without considering "the multiple limitations that Plaintiff has in actually performing these activities." (P's Brief at 20-22, ECF No. 34). To the extent Plaintiff contends the ALJ improperly

---

[3] In the event the ALJ continues to reject the opinions of Drs. Zeitoun and Nath, it may be prudent to consider also whether another medical opinion is needed. Although the Commissioner is correct that an ALJ is not obliged to solicit a medical expert's opinion where the record contains sufficient evidence to render a decision (D's Mem. at 16, ECF No. 40), an ALJ's independent assessment of the significance of medical findings can be problematic. *See*, *e.g.*, *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves") (collecting Seventh Circuit decisions); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("We have said repeatedly that an ALJ may not 'play doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny") (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). While discretionary, "use of a medical expert can help ALJs resist the temptation to 'play doctor,' . . . by evaluating evidence on his or her own," and "may be especially helpful when evaluating the severity of a condition . . . marked by subjective and fluctuating symptoms." *Gebauer v. Saul*, 801 Fed. App'x 404, 408-09 (7th Cir. 2020) (collecting Seventh Circuit decisions).

stated that Plaintiff's subjective complaints were "not entirely consistent" with the evidence (*id*. at 20), the Court notes that the Seventh Circuit continues to regard this phrasing as harmless "boilerplate," so long as the ALJ provides "legitimate reasons for discrediting the claimant's testimony." *Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020); *Harris v. Saul*, 835 F. App'x 881, 886 (7th Cir. 2020). Here, however, the Court agrees with Plaintiff that the ALJ's stated reasons for discrediting Plaintiff's claimed symptoms and limitations improperly failed to address her difficulties with those activities, and the assistance she has required with them.

As Plaintiff notes, the ALJ repeatedly mentioned that Plaintiff "completed her hygiene, cooked, baked, did the dishes, did the laundry, dusting and vacuuming." (AR 1168, 1170, 1171, 1176, 1178, 1179 (citing AR 273, 561)). But the decision failed to address Plaintiff's need for retraining with such activities after her July 2010 hospitalization, or her physical inability to perform them independently, such as requiring standby assistance when standing at a sink. (AR 1106). By 2013, Plaintiff's husband was still the primary cook, she was limited to simple meals when her husband was unable to cook, and she needed help with housework, and required family to carry laundry for her. (AR 76, 258-62, 270-75, 1199). Physical therapy records in early 2015 also indicated that Plaintiff still had difficulty with independent basic care, her husband still did 90% of the meal preparation, and she was "very slow" with vacuuming, sweeping, and mopping. (AR 695). The ALJ also repeatedly relied on Plaintiff's ability to drive, shop, and run errands (AR 1168, 1169, 1171, 1177), while acknowledging that she drives only during the day due to vision problems (legal blindness to the right in both eyes caused by radiation). (AR 1174, 1178). Yet the record also shows she could not drive initially for a year on the recommendation of her neurosurgeon because her reaction times made it dangerous (AR 256), and she relied on family to drive her longer distances and at nighttime thereafter. (AR 73, 79-80, 85). And while the ALJ

14

also repeatedly mentioned Plaintiff's ability to manage money (AR 1167-68, 1170-71, 1176, 1177, 1178, 1179), the decision also acknowledged that Plaintiff's husband primarily handles household bills. (AR 1168, 1177).

Seventh Circuit authorities repeatedly acknowledge the need to consider the difficulties a claimant encounters performing daily activities and the assistance required with them. *See*, *e.g.*, *Brown v. Colvin*, 845 F.3d 247, 253-54 (7th Cir. 2016) (ALJ "misrepresented many of [claimant's] activities" by failing to acknowledge her difficulties performing them and the "significant help" she received from family) (citing cases); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (ALJ must consider whether daily activities "can be done only with significant limitations"); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities.") (citing Seventh Circuit decisions). Accordingly, while it was certainly appropriate for the ALJ to consider Plaintiff's daily activities, it was also necessary to consider her difficulties performing them, the help she has needed doing so, and how long such limitations persisted during the period in question. The ALJ should consider those factors on remand, and then explain whether and why Plaintiff's activities corroborate or contradict her subjective symptoms and limitations.

### III. The VE's Testimony

Plaintiff's final challenge attacks the ALJ's step-five determination that she would have been able to perform three representative occupations available in the national economy: assembler, packer, and sorter. (AR 1180-81). Putting aside the issues concerning the ALJ's RFC determination and assessment of Plaintiff's subjective complaints discussed above, Plaintiff argues the ALJ's step-five determination was also flawed because it improperly relied on the testimony of a VE who failed to support his opinions regarding the numbers of these jobs available in the

national economy: assembler (130,000 national jobs); packer (215,000 national jobs); and sorter (98,000 national jobs). (P's Brief at 22-25, ECF No. 34; AR 1180-81, 1218-19). According to Plaintiff, the VE failed to substantiate these numbers because they are not available in the Dictionary of Occupational Titles (DOT) from which the job titles were derived, and the VE "refused to provide any methodology or explanation" of how he determined the number of each job available in the absence of such information in the DOT. (P's Brief at 22-23, 25, ECF No. 34).

The Commissioner responds that the VE did provide a sufficient basis for his opinions regarding these job numbers in response to questioning from Plaintiff's counsel – specifically, the Commissioner argues, "the VE explained that he based his job numbers on information from the Department of Labor and Census Bureau statistics, which are available by doing an on-line search," and "that his testimony was based on his professional experience, including over 28 years of experience placing individuals in occupations." (D's Mem. at 22, ECF No. 40 (citing AR 1220-21)). Thus, citing the Seventh Circuit's decision in *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018), the Commissioner persuasively argues that the VE properly "consulted relevant data sources, referenced the ability to obtain information through an on-line website, and relied on his 28+ years of experience in placing individuals in occupations." (D's Mem. at 23-24, ECF No. 40). *See also Chavez*, 895 F.3d at 970 ("the VE could support the approximation by, for example, drawing on knowledge of labor market conditions and occupational trends, gleaned from reviewing relevant data sources or from placing workers in jobs"). Additionally, citing the Supreme Court's subsequent decision in *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019), the Commissioner further argues that any failure to provide additional information "does not categorically preclude the VE's testimony from counting as 'substantial evidence,'" because "even where a VE does not provide the underlying data used to calculate job numbers, the otherwise

16

reliable testimony 'still will clear (even handily so) the more-than-a-mere-scintilla threshold.'" (D's Mem. at 24, ECF No. 40 (quoting *Biestek*, 139 S. Ct. at 1157)).

According to Plaintiff, the VE's testimony fails under *Chavez* because "the VE did not provide any methodology for providing his job numbers," and failed to explain how his 25-plus years of experience testifying and placing individuals with physical and/or mental limitations in jobs "allowed him to make a statistical analysis." (P's Reply at 7-9, ECF No. 41; AR 1221). And *Biestek* does not excuse these failures, Plaintiff argues, because that decision merely "rejected a categorical rule that precluded a VE from qualifying as substantial evidence when refusing a request for underlying data," and at the same time allowed "probing the strength of the expert's testimony on cross examination." (P's Reply at 8, ECF No. 41 (brackets omitted)). Plaintiff contends that her counsel attempted to probe the strength of the VE's testimony here, by asking "not just once, but four separate times, as to where the VE was getting his job numbers," but "the VE simply stood by his previous answers, refusing to provide any further information," "instead broadly referencing his experience." (*Id*. at 7-8). There are several problems with this argument.

First, contrary to Plaintiff's suggestion, the VE here was asked three times for the *source* of the job numbers he provided (not his methodology of relating them to DOT job titles), to which he answered "by "[u]tilizing the United States Department of Labor and U.S. Census Bureau Statistics, which can be found on your local website"; "you need to look those numbers up online"; and "I did give you that information." (AR 1220-21). Only once was the VE asked for his "method of deriving those specific numbers for the DOT," to which the VE explained that he relied on his past experience testifying and in job placement to relate the numbers obtained from the foregoing sources to DOT job titles. (*Id*. at 1221). Since *Biestek*, courts here and elsewhere have found such VE testimony sufficiently supported to constitute substantial evidence relied upon by an ALJ. *See*,

*e.g.*, *Baker v. Saul*, 1:19-cv-00392, 2020 WL 6618971, at *7 (N.D. Ind. Nov. 12, 2020) (VE properly relied upon experience to determine number of assembler and other jobs, in light of *Biestek's* acknowledgment that SSR 00-4p "allows VEs to invoke 'publicly available sources[,] . . . information obtained directly from employers and data otherwise developed from their own experience in job placement or career counseling.'" (quoting *Biestek*, 139 S. Ct. at 1152-53 (citing SSR 00-4p, 65 Fed. Reg. 75760 (2000))).[4] The same conclusion is warranted here.

Plaintiff's additional criticism that the VE "didn't explain" how his experience "allowed him to make a statistical analysis" (P's Reply at 9, ECF No. 41) casts no doubt on that conclusion. As the Commissioner argues, Plaintiff's counsel had the opportunity to continue questioning the VE (D's Mem. at 23, ECF No. 40), but did not ask how his experience enabled such an analysis. (*See* AR 1220-21). Plaintiff's criticism now that the VE failed to offer such an explanation therefore comes too late. *See Bryan S.B. v. Comm'r of Soc. Sec.*, 1:19-CV-392, 2020 WL 7364728, at *10 (N.D. Ind. Sept. 25, 2020) (criticism that "VE's professional experience in vocational rehabilitation and job placement does not qualify him to calculate job availability numbers" was "a bit late" where "attorney never inquired at the hearing as to the specific nature of the VE's professional experience"), *adopted by* 2020 WL 6618971, at *7. Nor did Plaintiff's counsel object to the VE's testimony or ask the ALJ to require additional information before relying upon it. Instead, Plaintiff's counsel proceeded to a closing argument that included no challenge to the VE's testimony. (AR 1221-22). This provides even greater reason to defer to the ALJ's assessment that the VE's testimony was sufficiently supported. *See Biestek*, 139 S. Ct. at 1157 ("case-by-case"

---

[4] *See also Michael G. v. Saul*, No. 18 CV 4564, 2020 WL 3000280, at *8-9 (N.D. Ill. June 4, 2020) (under *Biestek*, "vocational experts 'may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling,'" and thus, VE properly cited data from Bureau of Labor Statistics and his own experience to support number of DOT assembler and other jobs (quoting *Biestek*, 139 S. Ct. at 1152-53)).

18

assessment of sufficiency of VE testimony under "substantiality of evidence" standard "defers to the presiding ALJ, who has seen the hearing up close"); *see also Baker*, 2020 WL 6618971, at *7 ("No such objection occurred during Mr. Baker's hearing. . . . Instead, here, Mr. Baker's attorney asked how the VE arrived at the numbers and his attorney seemingly accepted the answer").

Accordingly, while a new step-five hearing may be required if Plaintiff's RFC is adjusted on remand for other reasons explained above (*see supra* Parts I and II), the Court finds no error in the ALJ's reliance on the VE's testimony during the prior hearing that would otherwise require a new step-five hearing. *See Michael G.*, 2020 WL 3000280, at *9 (remanding on other grounds). The Court therefore rejects Plaintiff's argument that the ALJ's step-five analysis independently requires remand, although Plaintiff would be free to question the VE regarding the bases for his opinions in any new step-five hearing required.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the alternative relief sought in Plaintiff's Opening Brief in support of reversing the decision of the Commissioner of Social Security [DE 34], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.[5] The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff against Defendant.

So ORDERED this 22nd day of March, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT

---

[5] Although Plaintiff alternatively asks the Court to reverse and remand for an award of benefits, such an award is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) ("Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings.") (citing 42 U.S.C. § 405(g)). As explained throughout this Opinion, remand for further proceedings (not an award of benefits) is required in this case, as it is not clear on the current record that an award of benefits is required.